UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE K. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 04 C 6228 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| AETNA LIFE INSURANCE CO. | ) |
| and THE SYSCO CORPORATION | ) |
| GROUP BENEFIT PLAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Lee K. Williams has sued Aetna Life Insurance Co. ("Aetna") and the SYSCO Corporation Group Benefit Plan ("the Plan") pursuant to § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), claiming that he was wrongfully denied long-term disability benefits. The case is before the Court on plaintiff's motion to strike the affidavits of Kaz Takashima ("Takashima") and the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, plaintiff's motion to strike and for summary judgment are denied and defendants' motion for summary judgment is granted.

**Facts[1]**

The Plan is maintained by SYSCO to provide, among other things, long-term disability ("LTD") benefits to its employees. (Def.'s LR 56.1(a)(3) Stmt. ¶ 5.) Aetna is the underwriter for the LTD policy issued to SYSCO and the claims administrator for the LTD component of the

---
[1]Because defendants prevail, the following facts are viewed in the light most favorable to plaintiff.

1

Plan. (*Id.* ¶ 4; R. at 000029.) As claims administrator, Aetna is vested with "discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of [the] policy." (R. at 000029, 000063-64.)

From November 1, 1994 to July 26, 2002, plaintiff was employed as a truck driver for the SYSCO corporation and was a participant in the Plan. (Pl.'s LR56.1(a) Stmt. ¶¶ 7-8.)

On July 26, 2002, Williams began to feel ill at work and was subsequently admitted to the hospital with complaints of shortness of breath, dizziness, and cough. (*Id.* at ¶ 17.) After plaintiff was released from the hospital, he continued to suffer from a variety of ailments, including extreme fatigue. (*Id.* ¶¶ 18-41.) For months thereafter, Williams visited numerous doctors and underwent a myriad of tests, all of which produced normal results. (*Id.*) Finally, in late 2002, Williams was diagnosed with Chronic Fatigue Syndrome ("CFS").[2] (R. at 000293.) As a result, in February 2003, plaintiff applied for LTD benefits from the Plan. (*Id.* at 000752.)

In March 2003, SYSCO completed a physical demand analysis for plaintiff's job, which it sent to Aetna. (*Id.* at 000492.) The analysis indicated that Williams' truck driver job required him to: (1) climb ladders, kneel, twist and stoop occasionally; (2) push, pull and reach frequently; (3) lift, carry and bend continuously; (4) grasp and engage in fine and gross manipulations frequently; (5) sit, stand, walk and climb stairs frequently; (6) lift up to twenty pounds continuously; (7) lift up to fifty pounds frequently; and (8) lift over fifty pounds occasionally. (*Id.*)

On May 5, 2003, Dr. Burton, a medical examiner employed by Aetna, reviewed Williams' medical records and concluded that they did not show that plaintiff had "a diagnosable

---

[2]Chronic Fatigue Syndrome is a disease of exclusion; that is, it cannot be objectively proven but is diagnosed only after all other conditions have been ruled out. (*Id.* ¶ 52.)

medical condition that explain[ed] his subjective symptoms of fatigue" or that he lacked the functional capacity to drive a truck for SYSCO. (*Id.* at 000694.)

According to defendants, the Plan denied Williams' claim on May 12, 2003, though the denial letter is incorrectly dated April 25, 2003. (*Id.* at ¶ 46; Defs.' Proposed Findings Fact Supp. Mot. Summ. J., Takashima Aff. ¶ 12; Defs.' Add'l Proposed Findings Fact Opp'n Pl.'s Resp. Defs.' Mot. Summ J., Takashima Supp. Aff. ¶¶ 6-10.)

On August 11, 2003, Dr. Sorin, Williams' treating physician, completed and submitted to Aetna a CFS residual functional capacity questionnaire regarding Williams. (Pl.'s LR56.1(a) Stmt. ¶ 50.) Among other things, the questionnaire says that Williams can walk only one or two city blocks without rest; can stand or walk for less than two hours of an eight-hour work day; needs a job in which he can shift positions at will; will frequently need to take thirty-minute rest breaks while working; can lift less than ten pounds, twist, bend, crouch, and climb ladders or stairs only occasionally; and has significant limitations doing repetitive reaching, handling and fingering. (R. at 000285-86.)

Dr. Sorin did not, however, provide the results of any functional testing to support his conclusions. (*Id.*) Nor did he provide all of the information requested by the questionnaire. In the section asking how long Williams can sit or stand at one time, Dr. Sorin wrote "Unknown." (*Id.* at 000285.) Similarly, in the section asking the percentage of time in an eight-hour day that Williams can grasp, turn and twist objects, perform fine manipulations with his fingers and reach over head with his arms, Dr. Sorin wrote "Untested." (*Id.* at 000286.)

In September 2003, plaintiff appealed the denial of his claim. (Pl.'s LR56.1(a) Stmt. ¶ 52.)

3

In a letter dated January 9, 2004, the Plan denied plaintiff's appeal because there was insufficient evidence to support Williams' contention that he was unable to perform the functions of his job. (R. at 000740-42.)

On July 28, 2004, plaintiff requested his administrative claim file from defendants and informed defendants that the Social Security Administration had found him disabled. (Pl.'s LR56.1(a) Stmt. ¶ 54.) Thereafter, he filed this suit.

## Discussion

### Motion to Strike

In connection with the summary judgment motions, defendants have submitted two affidavits from Kaz Takashima, the claims analyst who handled plaintiff's claim. In both affidavits, Takashima asserts that he sent to Williams the letter denying his LTD claim on May 12, 2003. (*See* Defs.' Proposed Findings Fact Supp. Mot. Summ. J., Takashima Aff. ¶ 12; Defs.' Add'l Proposed Findings Fact Opp'n Pl.'s Resp. Defs.' Mot. Summ J., Takashima Supplemental Aff. ¶¶ 6-10.) In the second affidavit, Takashima says that the April 25, 2003 date on the denial letter was an error that resulted from his use of another letter of that date as a template. (Defs.' Add'l Proposed Findings Fact Opp'n Pl.'s Resp. Defs.' Mot. Summ J., Takashima Supplemental Aff. ¶¶ 8-10.) Plaintiff asks the Court to strike the affidavits because they disclose Takashima's mental processes, which are irrelevant under the arbitrary and capricious standard of review that applies to this case and, in any event, were filed too late to enable plaintiff to take discovery on them.

It is true, as plaintiff asserts, that the Court cannot properly inquire into the plan administrator's mental processes on arbitrary and capricious review. *See Perlman v. Swiss Bank*

4

*Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1990). But mental processes are "the thought processes of [Aetna's] staff, the training of those who considered [plaintiff's] claim, and in general who said what to whom within [Aetna]." *Id.* at 981. These affidavits do not contain any of that information. They simply explain a typographical error in the denial letter. Thus, *Perlman* does not require that they be stricken.

Plaintiff's second argument, that they will be prejudiced if the affidavits are allowed to stand, is no more persuasive. Though the affidavits explaining the date discrepancy were not filed until after discovery closed, the existence of the discrepancy is apparent from the claim file, which was produced during discovery. (*Compare* R. at 000297 (denial letter dated April 25, 2003) *with id.* at 000296 (Aetna Notice of Disability to SYSCO stating that Williams' claim was denied on May 12, 2003).) Therefore, plaintiff could have explored the issue during discovery. In addition, regardless of the status of discovery, plaintiff could have countered Takashima's affidavits with evidence of his own; an affidavit, perhaps, attesting that he had received the denial letter before May 12, 2003. Plaintiff's failure to do either is not, however, a basis for striking Takashima's affidavits or for dismissing the uncontroverted facts they contain. Accordingly, the motion to strike is denied.

**Summary Judgment Motions**

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P 56(c). At this stage, a court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is only appropriate when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.* "On cross-motions for summary judgment, each movant must . . . satisfy the requirements of Rule 56." *Billings v. Continental Cas. Co.,* No. 02 C 3200, 2003 WL 145420, at *5 (N.D. Ill. Jan. 21, 2003).

Aetna argues that it is entitled to judgment because it is not a proper party to this suit. As a general rule, the only proper defendant in an ERISA benefits action is the plan itself. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004). The Seventh Circuit has occasionally made exceptions to that rule, however, and plaintiff says one should be made here.

The court made one such exception in *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549 (7th Cir. 1997). The plaintiff in that case sued the deceased participant's employer, rather than the Plan, to recover benefits. *Id.* at 551. The employer, which had not moved in the district court for summary judgment on that basis, nonetheless argued before the court of appeals that it was not a proper party to the suit. *Id.* Because it had not raised the issue below and the plan documents referred to the employer and the plan interchangeably, the court refused to affirm judgment for the employer on the grounds that it had been wrongly sued. *Id.*; *see Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (citing *Riordan* and permitting ERISA benefits suit to go forward against employer because the plan documents revealed that "[t]he [employer] and the plan are . . . even more closely intertwined in this case than in *Riordan*"); *Penrose v. Hartford Life & Accident Ins. Co.*, No. 02 C 2541, 2003 WL 21801214, at *3 (N.D. Ill. Aug. 4, 2003)

6

(stating that insurer is a proper party to ERISA benefits suit if there is no evidence that a plan exists or if the plan is nearly impossible to identify).

This case is nothing like *Riordan, Mein* and *Penrose*. Aetna is not Williams' employer nor is it referred to as, or interchangeably with, the Plan in the Plan documents. Rather, the Plan documents clearly identify the SYSCO Corporation Group Benefits Plan as the Plan, Aetna as the claims administrator, and SYSCO as the Plan administrator. (*See* R. 000029, 000063-64.) Because the Plan documents in this case do not equate the Plan with Aetna or otherwise breed confusion as to the Plan's identity, *Riordan, Mein* and *Penrose*, do not support plaintiff's claim against Aetna. Aetna's motion for summary judgment is, therefore, granted.[3]

Plaintiff and the Plan have also moved for summary judgment. The parties agree that the arbitrary and capricious standard of review applies. (*See* Pl.'s Mem. Supp. Summ. J. & Resp. Def.'s Mot. Summ. J. at 10; Defs.' Mem. Resp. Pl.'s Mot. Summ. J. & Reply Defs.' Mot. Summ. J. at 4.) Thus, that is the standard we will apply.

"Review under [the arbitrary and capricious] standard is extremely deferential." *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998). A court must uphold a plan's decision if:

> (1) it is possible to offer a reasonable explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Houston v. Provident Life & Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir 2005) (internal quotation omitted). The Plan's decision in this case satisfies that undemanding standard.

---

[3] Plaintiff also cites cases from other jurisdictions for the proposition that insurers who act as claims administrators are proper parties to ERISA suits. (*See* Pl.'s Mem. Supp. Mot. Summ. J. & Resp. Def.'s Mot. Summ J. at 9.) Given the Seventh Circuit's silence on the subject, however, we decline to follow these cases.

According to the Plan, an employee is disabled if he is "not able to perform the material duties of [his] own occupation solely because of: disease or injury; and [his] work earnings are 80% or less of [his] adjusted predisability earnings." (R. at 000039.) The Plan denied Williams' claim because his medical records did not show that he had (1) "a diagnosable medical condition that explains [his] subjective symptom of fatigue," or (2) a "significant loss of range of motion, strength, sensation, coordination, etc., to . . . . render [him] unable to work in [his] usual occupation as a truck driver." (R. at 000299.)

Subsequently, Williams submitted to Aetna the residual function questionnaire completed by Dr. Sorin and appealed the decision on his claim. The Plan denied the appeal saying:

> The Residual Functional Capacity Questionnaire completed by Dr. Sorin on August 11, 2003 was reviewed. It revealed in Aetna's assessment, several unfounded conclusions of Mr. Williams [sic] functional capabilities. Dr. Sorin stated it was "unknown" how long Mr. Williams could sit and stand continuously during an eight-hour workday but that he was only able to sit or stand (in total) for less than two hours. It's unclear how Dr. Sorin reached that assumption without proper testing. Dr. Sorin confirmed that Mr. Williams was "untested" when asked how often he could use his arms/hands/fingers but stated he was "occasionally" able to lift up to 10 pounds. How did Dr. Sorin restrict Mr. Williams to lifting no more than ten pounds without testing? Mr. Williams [sic] numerous symptoms such as short-term memory loss, muscle pain, headaches, and unrefreshing sleep were also indicated in the report but on February 24th, 2003 Mr. Williams reported he awakened feeling good with energy.
>
> Although Dr. Sorin diagnosed Mr. Williams with chronic fatigue syndrome, the functional impairment you assert prevents Mr. Williams from working in his own occupation is not apparent. There is no record that Mr. Williams' physical functional capacity was tested to accurately determine his limitations and restrictions. As Dr. Sorin stated in his report Mr. Williams was not tested for many of the functions he claims he is unable to perform such as lifting, sitting and standing. Without such evidence, we are unable to reverse our decisions and Mr. Williams [sic] claim will remain closed.

(*Id.* at 000741.)

Plaintiff says the denials of his claim and appeal are arbitrary and capricious because the Plan (1) discounted his subjective symptoms of CFS; (2) violated its own guidelines; (3) did not conduct a full and fair review of the evidence; and (4) improperly credited the opinion of its medical consultant over that of plaintiff's treating physician.[4]

In support of his first argument, Williams cites *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). The plan in that case denied Hawkins' claim that he was totally disabled by fibromyalgia, largely because there was no objective evidence that the pain caused by his condition precluded him from working. *Id.* at 916, 919. According to the court, the plan's disregard of Hawkins' subjective complaints of pain was "unreasonable," even under the arbitrary and capricious standard of review:

> [T]he gravest problem with Dr. Chou's report is the weight he places on the difference between subjective and objective evidence of pain. Pain often and in the case of fibromyalgia cannot be detected by laboratory tests. The disease itself can be diagnosed more or less objectively by the 18-point test . . . , but the amount of pain and fatigue that a particular case of it produces cannot be. It is "subjective" – and Dr. Chou seems to believe, erroneously . . . . , that because it is subjective Hawkins is not disabled.

*Id.* at 919. Plaintiff says that his claim, like that of the plaintiff in *Hawkins*, was rejected because his subjective complaints of fatigue could not be objectively verified.

The Court agrees, in part. One of the two grounds on which the Plan based its initial denial of plaintiff's claim was that he did not have diagnosable condition that explained his subjective symptoms. Though there is no lab test to diagnose CFS, it is a diagnosable condition and was diagnosed by Dr. Sorin. If the Plan had rejected plaintiff's claim solely on the grounds that CFS cannot be objectively diagnosed, its decision would run afoul of *Hawkins*.

---

[4] Plaintiff also argues that the decision is arbitrary and capricious because it was dated before the medical examiner's report. As discussed above, however, the Plan has established that the date on the denial letter was a typographical error. Thus, the Court rejects this argument.

9

But that was not the only basis for the Plan's denial of plaintiff's claim. It also rejected the claim because there was no evidence about the extent to which plaintiff's fatigue impacted his ability to perform his job functions, *i.e.*, climbing, kneeling, twisting, pushing, pulling, reaching, lifting from twenty to one hundred pounds, carrying, bending, engaging in fine and gross manipulations, standing, stooping and walking. Plaintiff admits that being unable to do his job is one of the prerequisites to being disabled under the Plan (Pl.'s LR 56.1(a) Stmt. ¶ 11), and the record shows that he offered no evidence regarding his functional limitations during the initial review of his claim.

Plaintiff says the Plan's insistence on such evidence is unreasonable because fatigue, like pain, cannot be measured. But the Plan did not reject plaintiff's claim because his fatigue could not be measured. It did so because there was no evidence that his functional abilities, which can be measured, were limited by the fatigue.[5] Because the Plan offered an alternative reason that is supported by the record for its initial denial of plaintiff's claim, its decision was not arbitrary and capricious.

Nor was the Plan's denial of plaintiff's appeal. That decision was not based on plaintiff's purportedly undiagnosable condition. (*See* R. at 000741 (acknowledging that plaintiff had been diagnosed as having CFS).) Instead, it rejected the appeal because there was no evidence that Dr. Sorin had tested plaintiff "to accurately determine [the] limitations and restrictions" caused by his fatigue. (*Id.*) Because the Plan did not cite plaintiff's lack of a diagnosable illness as a basis for denying his appeal, the faultiness of that contention is not a basis for attacking the decision.

---

[5] Certainly, any test of those abilities would be somewhat subjective. That is, Dr. Sorin could report after testing Williams that he could walk for only five minutes without complaining of fatigue, but Dr. Sorin would have no way of knowing whether those complaints were genuine. That is the kind of subjectivity, however, that *Hawkins* says plans must accept.

Plaintiff's second argument, that the Plan did not follow its own internal guidelines, is no more persuasive. The first guideline Williams says the Plan disregarded is one that instructs claims analysts to consult an outside examiner or seek additional medical information if the reports of the Plan's examiner and the attending physician disagree. (*See id.* at 000990.) As previously noted, the reports did diverge with respect to plaintiff's diagnosis. But, as discussed above, plaintiff's lack of a diagnosable illness was not the linchpin of the Plan's initial decision and played no role in its denial of his appeal. Thus, the Plan's failure to seek an outside medical opinion does not make its decisions arbitrary and capricious.

The second guideline plaintiff contends the Plan ignored requires it to contact an independent medical examiner or conduct a functional capacity evaluation if the Plan administrator has questions about the diagnosis. (*See id.* at 001070.) As defendants point out, this guideline says that it applies only to test change reviews, which defendants say are reviews of claims from current beneficiaries seeking additional benefits because they cannot perform any occupation. (*See* Defs.' LR 56.1(b)(3)(B) Stmt.¶ 16; R. at 001070.) Because plaintiff has offered no evidence to suggest that defendants' description of test change reviews is incorrect or that this guideline otherwise applies to first-time claimants, the Plan's failure to follow it is not suspect.

Even if the Plan did not violate its guidelines, plaintiff says its decisions are still arbitrary and capricious because they were not based on a full and fair review of the record. In support of this argument, plaintiff cites *Hackett v. Xerox*, 315 F.3d 771, 775 (7th Cir. 2003).

The plaintiff in *Hackett* had been receiving disability benefits for more than ten years based on the conclusions of numerous physicians that he had a disabling psychiatric condition. *Id.* at 773. In the twelfth year, however, Xerox terminated plaintiff's benefits on the strength of

its examiner's conclusion that plaintiff's condition did not preclude him from working. *Id.* The reason Xerox gave for the termination, and the subsequent denial of plaintiff's appeal, was simply "'Continued Disability not clinically supported.'" *Id.* Thereafter, plaintiff filed suit claiming that the termination was arbitrary and capricious. *Id.* The district court entered summary judgment for Xerox, and the plaintiff appealed. *Id.*

According to the Seventh Circuit, ERISA plans must communicate to claimants the "specific reasons for [a] denial" and give them "an opportunity for 'full and fair review' by the administrator." *Id.* at 775 (internal quotation omitted). To do so, "the administrator must weigh the evidence for and against the denial or termination of benefits, and within reasonable limits, the reasons for rejecting evidence must be articulated." *Id.* (internal quotation and alteration omitted). In the court's view, the Xerox plan had done neither:

> Applying this standard to Hackett's case makes clear that the termination procedures were arbitrary and capricious. After twelve years of paying out disability benefits, Xerox terminated those benefits simply on the basis of an examination by Dr. Holeman, whose conclusion that Hackett was able to work was contrary to numerous prior opinions. Dr. Holeman provided no explanation for his departure from the opinions of the previous doctors, and Xerox provided no explanation for believing Dr. Holeman's opinion over the opinions of the previous doctors. There was no weighing of the evidence for and against, and there were no articulated reasons given for Xerox's rejection of the evidence that Hackett was unable to work. Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review.

*Id.*; *see* 29 C.F.R. § 2560.503-1(g) (stating that denial notice must state "the specific reason . . . for the denial," make "reference to the specific plan provisions on which the denial is based," describe "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" and describe the time and procedures for appeal).

The denial of the claim and appeal in this case complied with *Hackett* and the

12

regulations. The initial denial letter, which was sent before Dr. Sorin submitted the functional capacity questionnaire, cites the LTD policy definition of disability, reviews the evidence contained in plaintiff's medical records, and concludes that:

> The physical examination data do not reveal evidence of significant loss of range of motion, strength, sensation, coordination, etc., to justify discontinuation of workplace activities. There are no data to indicate that you have sufficient impairment to render you unable to work in your usual occupation as a truck driver.

(R. at 000297-300.) In addition, the letter instructs plaintiff that he can submit additional information for Aetna's review, and tells him how and when to file an appeal. (*Id.* at 000300-01.)

Similarly, the letter denying plaintiff's appeal says that Aetna reviewed plaintiff's entire file, including the functional capacity questionnaire, and acknowledged Dr. Sorin's diagnosis of CFS, but it also says:

> There is no record that Mr. Williams' physical functional capacity was tested to accurately determine his limitations and restrictions. As Dr. Sorin stated in his report Mr. Williams was not tested for many of the functions he claims he is unable to perform such as lifting, sitting and standing. Without such evidence, we are unable to reverse our decision and Mr. Williams [sic] claim will remain closed.

(*Id.* at 000741.) Moreover, the letter informed plaintiff that he was entitled to copies of all documents relevant to his claim and could file an ERISA suit to contest the Plan's decision. (*Id.*)

Though both letters contain the information required by *Hackett*, plaintiff contends that the virtual identity between the Plan's initial denial and Dr. Burton's report demonstrates that the Plan did not give his claim any meaningful review. The similarity between the two documents would be troubling if there were no evidence that the claims analyst had considered the entire record before rendering his decision. But plaintiff admits that "Takashima . . . reviewed Dr. Burton's report, Mr. Williams' medical records and the Attending Physician's Statement" before

13

denying the claim. (*See* Pl.'s LR56.1(b)(3)(B) Stmt. ¶ 47.)[6] That admission vitiates the inference that plaintiff draws from the documents, that Takashima considered only Dr. Burton's report in deciding plaintiff's claim.

In short, unlike the denial letter in *Hackett*, the denials in this case identify the relevant policy provision and specifically explain why Aetna concluded plaintiff did not satisfy it. Therefore, they are not fatally deficient.

Plaintiff's last argument is that the decision is invalid because the Plan arbitrarily favored the opinion of Dr. Burton, its paid consultant, over that of Dr. Sorin, plaintiff's treating physician. In plaintiff's view, such reliance is improper because physicians employed by Plans have an incentive to make findings that favor their employers.

As plaintiff acknowledges, however, the Supreme Court has rejected the notion that plan administrators must "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Further, the Seventh Circuit has said that plan administrators need not reject the opinions of its consultants simply because they were paid to render them:

> [A]n administrator's decision to seek independent expert advice is evidence of a thorough investigation. When an administrator . . . opts to investigate a claim by obtaining an expert medical opinion – independent of its own lay opinion and that of the claimant's doctors – the administrator is going to pay a doctor one way or another. . . . . Paying for a legitimate and valuable service in order to evaluate a claim thoroughly does not create a . . . conflict.

*Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (internal quotations, alterations and citations omitted), *petition for cert. filed*, 75 U.S.L.W. 3035 (U.S. July 14, 2006) (No. 06-70).

---

[6]Plaintiff denies that Takashima reviewed Dr. Burton's report because it is dated after the denial letter. For the reasons discussed above, that denial is unfounded.

Similarly, a consultant's failure to examine the plaintiff does not cast doubt on his opinion:

> The district court and Davis also fault Unum for relying on "a mere paper review," lamenting the fact that Unum's doctors did not personally examine Davis or speak with his doctors. However, neither . . . has cited, and our research has not disclosed, any authority that generally prohibits the commonplace practice of doctors arriving at professional opinions after reviewing medical files. In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations.

*Id.* at 577. In other words, the fact that Dr. Burton did not examine plaintiff and was paid for reviewing his medical records does not render his report suspect. Consequently, the Plan's failure to discount it for those reasons was not arbitrary and capricious.

In sum, the Plan's rejection of plaintiff's claim is, in view of the record, a reasonable one. Accordingly, the Plan's motion for summary judgment is granted.

**Attorney's Fees**

That leaves defendants' request for attorney's fees. ERISA allows the Court, in its discretion, to award reasonable attorney's fees and costs to either party. 29 U.S.C. § 1132(g)(1). While there is a modest presumption in favor of awarding fees to the prevailing party, the decision "boil[s] down to the . . . question: Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 464 (7th Cir. 2001) (quotation omitted).

The Court finds that plaintiff's claim was substantially justified for two reasons. First, plaintiff had his treating physician's opinion, albeit not substantiated by testing, that the CFS diminished plaintiff's functional capacity. (*See* R. at 000284-86, 000293.) Second, Williams

15

had a finding of disability from the Social Security Administration, which was rendered after his Plan remedies were exhausted. (*See* Pl.'s LR56.1(a) Stmt. ¶ 54.) Taken together, those findings could reasonably have led plaintiff to believe that he might win this suit. Because Williams had a reasonable basis for bringing this suit and there is no evidence that he did so to harass defendants, the Plan's request for fees is denied.

## Conclusion

For the foregoing reasons, plaintiff's motion to strike and motion for summary judgment [doc nos. 64, 78, 92] are denied and defendants' motion for summary judgment [doc. no. 68] is granted. This case is hereby terminated.

**SO ORDERED.**                    **ENTER:   9/28/06**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**